

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION # 03CV30298-MAP

| | |
|---|---|
| JAMES TULGAN,<br>         Plaintiff<br><br>v.<br><br>BERKSHIRE ARMORED CAR SERVICES<br>CO., INC. PROFIT SHARING PLAN,<br>BERKSHIRE ARMORED CAR SERVICES<br>CO., INC., GERARD S. REDER and<br>JACQUELINE POWERS<br>         Defendants | PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT ON<br>COUNTERCLAIMS OF THE<br>DEFENDANTS |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS OF THE DEFENDANTS

The plaintiff moves the Court to enter summary judgment in his favor on all the counterclaims of the defendants for the reasons stated in this memorandum. All the relevant facts, with supporting material, are included in the Plaintiff's Statement of Uncontroverted Facts which is attached to this memorandum as Exhibit A and the affidavit of the plaintiff which is attached as Exhibit B.

### PROCEDURAL POSTURE

The plaintiff sued the defendants contending they violated his rights under ERISA by failing to pay him all of his vested benefits in the Berkshire Armored Car Services Co., Inc. Profit Sharing Plan. Each of the defendants, with the exception of Jacqueline Powers, served

255552-1

counterclaims on the plaintiff which he has denied. The plaintiff contends all the counterclaims must be decided in his favor as a matter of law for the reasons stated hereafter.

## SUMMARY OF ARGUMENT

The defendant Powers did not assert any counterclaims. The remaining defendants asserted four counterclaims each, except Mr. Reder who asserted an additional two counterclaims. Three of the counterclaims asserted by the three defendants allege Mr. Tulgan committed fraud while employed by the defendant Berkshire Armored Car Services Co., Inc. ("Corporation"). Mr. Tulgan last worked for the Corporation during 1997 and his complaint in this case was not filed until December, 2003. Since fraud claims are subject to a three year statute of limitations, all those claims are untimely as a matter of law. One of the fraud claims allegedly arose from activity of Mr. Tulgan "right after" he finished employment with the Corporation. That is also untimely as a matter of law.

The fraud claims of the defendant Gerard Reder ("Mr. Reder") and Berkshire Armored Car Services Co., Inc. Profit Sharing Plan ("Plan") also fail because they cannot prove they relied on a misrepresentation made by the plaintiff to their detriment.

The defendants Mr. Reder, the Corporation and the Plan also assert a counterclaim contending they were damaged when Mr. Tulgan allegedly assaulted another employee of the Corporation while he was employed by the Corporation. That claims also fails under the applicable three year statute of limitations. Additionally, none of those defendants were legally damaged by the alleged assault.

Mr. Reder asserts two other counterclaims alleging he lent money to the plaintiff and the plaintiff failed to repay him. By Mr. Reder's own testimony, one alleged loan was a gift to either Mr. Reder's daughter, who was then the wife of the plaintiff, or to her and the plaintiff. There

255552-1

2

was no legal obligation to repay a gift. The other loan, by the testimony of Mr. Reder, was either a gift or investment by Mr. Reder in a startup business venture that failed and, in either case, Mr. Tulgan had no legal duty to repay the money. In addition, both alleged "loans" were due, if at all, more than six years before suit was filed in this Court and, therefore, those claims are untimely under the applicable statute of limitations.

ARGUMENT

ALLEGED MISAPPROPRIATION BY ILLEGAL USE OF TELEPHONE

The Corporation and Mr. Reder allege, in Paragraph 4(a) of their counterclaims, that Mr. Tulgan misappropriated by fraud the property of the Corporation by illegal use of its telephone. The Plan alleges in Paragraph 4(a) of its counterclaim that Mr. Tulgan misappropriated its property by illegal use of its telephone. The plaintiff denied the allegation and affirmatively raised the defense of statute of limitations.

Mr. Reder was deposed, both in his individual capacity and as the designated representative of the Corporation and the Plan. (Exhibit A, Statement of Uncontroverted Facts, Paragraph 2 (hereinafter "Exhibit A")). The defendants base their claim on the contention that Mr. Tulgan made unauthorized telephone calls from a terminal of the Corporation to "900 numbers." (Exhibit A, Paragraph 4). The defendants contend those alleged telephone calls were made while Mr. Tulgan was employed by the Corporation. (Exhibit A, Paragraph 6 and 7). The defendants contend Mr. Tulgan made the unauthorized telephone calls based on the phone bills received. (Exhibit A, Paragraph 10).

Mr. Tulgan last worked for the Corporation during September, 1997. (Exhibit B, Paragraph 2). The complaint in this case was not filed until December, 2003, more than six years after Mr. Tulgan last worked for the Corporation.

Claims of fraud are subject to a three year statute of limitations. General Laws, c. 260, §2A. The defendants knew or reasonably should have known of the alleged fraud shortly after the phone calls were made because they contend their evidence of the unauthorized phone calls were the phone bills received for them. Since the defendants did not bring this claim within three years of the alleged unauthorized phone calls, judgment must be entered for the plaintiff on this counterclaim.

Mr. Reder and the Plan's counterclaim for the alleged unauthorized telephone calls charged to the Corporation are also subject to summary judgment because at least two essential elements necessary to establish fraud do not exist. The Supreme Judicial Court has stated:

> "In a deceit action, the plaintiff must prove ' that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.'" Danca vs. Taunton Savings Bank, 385 Mass. 1, 429 N.E. 2d 1129, 1133 (1982).

In this case, the alleged misrepresentation was made to the Corporation and not to the other defendants. In addition, there is no evidence that Mr. Reder, as an individual, or the Plan suffered any legally recognizable loss as a result of the alleged representation. Mr. Reder and the Plan, therefore, cannot prove a misrepresentation was made to them or they suffered any damage. Consequently, they cannot prove fraud.

## MISAPPROPRIATION BY FRAUD BY SUBMITTING OVERSTATED INVOICES

Mr. Reder and the Corporation allege in Paragraph 4(b) of their counterclaims that the plaintiff misappropriated by fraud the property of the Corporation by submitting false invoices for payment. The Plan alleges in Paragraph 4(b) of its counterclaim that Mr. Tulgan misappropriated by fraud its property by submitting false invoices for payment. Mr. Reder testified those allegations were based on the contention that Mr. Tulgan submitted weekly reports

of the amount of production he claims to have produced and was paid on that basis by the Corporation. (Exhibit A, Paragraph 12). Mr. Reder testified those alleged actions occurred while Mr. Tulgan was an employee of the Corporation. (Exhibit A, Paragraph 13). He testified the weekly reports were also submitted while Mr. Tulgan was an employee of the Corporation. (Exhibit A, Paragraph 14). The only documents the defendants could produce to support that claim related to events that occurred in 1990, 1991 and 1992. (Exhibit A, Paragraphs 15-16). Mr. Reder testified an independent CPA firm produced a report showing that Mr. Tulgan was overpaid during 1991. (Exhibit A, Paragraph 17).

Again, the fraud alleged in Paragraph 4(b) of the counterclaims of Mr. Reder, the Corporation and the Plan all refer to alleged fraud by Mr. Tulgan while he was an employee of the Corporation. In addition, the testimony of Mr. Reder indicates the alleged fraud occurred during 1991 and was reported by a CPA firm during 1991 or 1992. Since Mr. Tulgan last worked for the Corporation during 1997 and the complaint in this case was not filed until December, 2003, these allegations of fraud are also untimely under the applicable three year statute of limitations and the plaintiff is entitled to summary judgment for that reason.

In addition, the fraud claims of Mr. Reder and the Plan also fail because the misrepresentations, if any, were made to the Corporation and not to Mr. Reder, as an individual, or to the Plan. Mr. Reder and the Plan, therefore, cannot prove that a misrepresentation was made to them or that they suffered any loss as a result of a misrepresentation by Mr. Tulgan. Consequently, the plaintiff is also entitled to summary judgment because of those several failures of proof.

## VIOLATION OF COMPANY RULES AND POLICIES

Mr. Reder, the Corporation and the Plan allege in Paragraph 4(d) of their counterclaims that Mr. Tulgan violated company rules and policies thereby damaging the Corporation. When asked what information the defendants had to support that allegation, Mr. Reder testified that Mr. Tulgan violated the Corporation's rules by fighting during company hours and that he stole from the company by unauthorized use of its telephone. (Exhibit A, Paragraph 27).

Mr. Reader also testified that Mr. Tulgan allegedly solicited a letter from one of the Corporation's vendor's falsifying the value of machinery owned by the Corporation. Mr. Reder testified Mr. Tulgan allegedly did that "right after he left our employment." (Exhibit A, Paragraph 27). When asked to be as specific as possible when that alleged event occurred, Mr. Reder testified "I don't know. I don't know which time frame that he left." (Exhibit A, Paragraphs 27-28).

Mr. Reder also testified that no loss was suffered by any defendant because Mr. Reder was advised of the alleged fraud and no transaction took place based on it. (Exhibit A, Paragraph 29).

This allegation of fraud also fails under the statute of limitations. In order to survive a motion for summary judgment asserting that a claim was not filed within the time allowed by the applicable statute of limitations, the person asserting the claim must demonstrate a reasonable expectation of proving that the claim was timely followed. <u>Jane Doe vs. Gerard Creighton</u>, 439 Mass. 281, 786 N.E. 2d 1211 (2003). The only evidence of when the alleged fraudulent event occurred, according to Mr. Reder, was "right after he [Mr. Tulgan] left our employment." (Exhibit A, Paragraph 27). When Mr. Reder was asked to more specifically state when that

event allegedly occurred, he testified "I don't know. I don't know which time frame that he left." (Exhibit A, Paragraph 28).

The burden is on the defendants to show that their claim for this alleged fraud was filed within three years of the fraud. The only evidence the defendants can produce is that the alleged fraud occurred "right after" Mr. Tulgan left employment with the Corporation. It is uncontested that Mr. Tulgan left employment with the Corporation more than six years before the complaint was filed in this case. Consequently, the defendants cannot show a reasonable expectation that they can prove the alleged fraud occurred within three years of December, 2003 and, consequently, their claim is untimely under the applicable statute of limitations.

Mr. Tulgan is also entitled to summary judgment on this claim because none of the defendants can establish that they suffered any damage because of the alleged fraud. Mr. Reder testified he was advised of the alleged fraud and that no transaction took place based on it. Consequently, the Corporation did not suffer any damage and, therefore, it cannot prove that necessary element of a fraud claim. As in the other fraud counts, Mr. Reder, as an individual, and the Plan have no proof that the alleged misrepresentation was made to them or they suffered any damage as a result of it and their claims are also subject to summary judgment for those reasons.

## ALLEGED ASSAULT ON THE DEFENDANT MS. POWERS

Mr. Reder, the Corporation and the Plan allege in Paragraph 4(c) of their counterclaims that Mr. Tulgan assaulted the defendant Jacqueline Powers while she was an employee of the Corporation thereby causing her injury. When asked what information any of the defendants had to support that allegation, Mr. Reder testified Mr. Tulgan threw a set of keys at Ms. Powers

which she dodged. (Exhibit A, Paragraph 20). Mr. Reder testified he witnessed the event stating:

> I went out after him [Mr. Tulgan] because I feel that women only when you're married to them should be beaten. Strike that, I don't know why I said that. (Exhibit A, Paragraph 21).

Mr. Reder testifed that alleged occurrence happened when Mr. Tulgan was an employee of the Corporation. (Exhibit A, Paragraph 22). Ms. Powers never asserted a claim against any of the defendants for the alleged assault. (Exhibit A, Paragraph 24). When asked what damage was suffered by any of the defendants which were asserting a counterclaim, Mr. Reder testified the only damage was that Mr. Tulgan and Ms. Powers would not talk to each other. (Exhibit A, Paragraph 25).

The plaintiff is entitled to summary judgment on this claim for the same reasons. First, the alleged assault occurred while Mr. Tulgan was an employee of the Corporation which means it occurred more than three years before the complaint was filed. A complaint for an assault must be filed within three years of the event. General Laws, Chapter 260, §2A. In addition, none of the plaintiffs in counterclaim suffered a loss as a result of the alleged assault and, since loss is a necessary element for a legal claim of assault, Mr. Tulgan is also entitled to summary judgment for that failure of proof.

## CLAIM FOR "LOAN" OF $15,000

Paragraph 6 of the counterclaim of Mr. Reder claims that Mr. Tulgan failed to repay a loan of $15,000 for the purchase of Mr. Tulgan's home in Longmeadow, Massachusetts. Mr. Reder testified he loaned $15,000 for the down payment on a house in Longmeadow,

Massachusetts for Mr. Tulgan and his then wife who is the daughter of Mr. Reder but he could not recall when he did that. (Exhibit A, Paragraph 31).

Mr. Reder was asked several questions seeking the details of communications among himself, Mr. Tulgan and his daughter concerning the "loan." His answers are, at best, rambling and nonresponsive and are quoted in Paragraph 32 of Exhibit A. When asked "But what, if anything did you or anyone on your behalf say to express that you are loaning them money," Mr. Reder stated:

> Do I remember distinctly saying to them, pay me back within six months? No. Shit, there I go again. Here's a father lending his daughter money. I didn't ask for an interest charge, I didn't ask for a payback, so you win that round.

Mr. Reder was then asked whether the money was a gift to his daughter. He testified:

> I can't characterize it. Let's put it this way; I would not force her into bankruptcy to pay me back. If I need money, will the kids take care of me?

Mr. Reder was again asked for his best recollection of what he or anyone on his behalf said to Mr. Tulgan or his daughter concerning the $15,000. He responded as follows:

> My best memory, it's a period of time when Jim was going to sell the house, Terry and Jim, at a profit. Then they were going to return the loan to me. That didn't happen. He took the money and bought or invested in Deli Time. While his mother didn't lose any money, I lost mine. So it puts a different turn to it. You know, would I throw my daughter in debtor's prison, no. Would I throw Jim in debtor's prison? Yes.

Mr. Tulgan states he understood the $15,000 to be a gift to his wife for a down payment on a home in Longmeadow they intended to purchase jointly. (Exhibit B, Paragraph 3).

The burden is on Mr. Reder to produce sufficient evidence to allow a trier of fact to conclude Mr. Tulgan agreed to borrow the money from Mr. Reder and agreed to pay it back. There is clearly insufficient evidence to allow a reasonable trier of fact to make that determination. Based on Mr. Reder's own testimony, the payment was a gift and it was made to

his daughter, not Mr. Tulgan. Consequently, there is insufficient evidence to establish there was a legally enforceable agreement by Mr. Tulgan to repay $15,000 to Mr. Reder.

Mr. Reder's claim also fails as a result of the statute of limitations. If Mr. Tulgan was obligated to repay Mr. Reder the $15,000, it was due upon the sale of the house according to Mr. Reder's testimony. The affidavit of Mr. Tulgan states that the house was sold during 1992 and that Mr. Reder knew of the sale at the time of the sale. (Exhibit B, Paragraph 3).

The applicable statute of limitations for a breach of contract action is six years. General Laws, Chapter 260, §2. The original complaint in this action was filed during December, 2003 which is more than twelve years after the "loan" became due on the sale of the house in 1992. Consequently, the claim is barred by the applicable statute of limitations.

## CLAIM FOR LOANED MONIES

Paragraph 7 of the counterclaim of Mr. Reder alleges Mr. Reder loaned monies to Mr. Tulgan for a business venture which Mr. Tulgan failed to repay. Mr. Reder was asked to state the facts on which he based that claim. Again, his answers were ambiguous and nonresponsive and are quoted in Paragraph 35 of Exhibit A. (Exhibit A, Paragraph 35).

Mr. Reder testified he loaned money to Mr. Tulgan for a business venture named Deli Time and another business venture called Armor Wear which was to manufacture and sell bulletproof vests. Mr. Reder testified he had "no idea" how much he had loaned Mr. Tulgan. Mr. Reder testified he did not know when he had loaned the money to Mr. Tulgan stating he did not know if it was two, five or ten years ago.

Mr. Reder was asked what were the terms of the loan. He testified:

> Again, the same scenario as for the house, give it to them. The bread is cast on the water; if it came back I would have harvested it. It did not come back.

Mr. Reder was asked why he contended that Mr. Tulgan had some legal duty to repay him for whatever amount he gave to Mr. Tulgan. After several nonresponsive statements, he answered by stating:

> I hate being a money machine and I don't mind giving my children the benefit of what I have earned. There is a sense of principle that is instilled in my blood, in my children, that when they take something, they owe it or a thank you; none of which did I ever get back and you are instigating this lawsuit.

Mr. Tulgan states that, during the mid or late 1980's, Mr. Reder gave him an amount of money of less than $5,000 to help him start a business venture called Armor Wear. Mr. Tulgan does not recall there was an agreement with Mr. Reder whether he was to repay any of that money. (Exhibit B, Paragraph 5).

That business venture did not develop successfully and Mr. Tulgan terminated the venture not later than 1990. Mr. Tulgan communicated to Mr. Reder that he was terminating the venture at the time it was terminated. (Exhibit B, Paragraph 6).

Mr. Tulgan is entitled to summary judgment on this claim for the same reasons he is entitled to summary judgment on the alleged "loan" toward his former marital home. When asked for the facts upon which he based his claim that Mr. Tulgan agreed to repay him the money given to him for a business venture, Mr. Reder did not provide any testimony from which a trier of fact could reasonably determine that Mr. Tulgan agreed to repay Mr. Reder that amount of money. Instead, Mr. Reder stated the money was provided under the same terms as the money he provided to buy a marital home which was clearly a gift.

Even if there was sufficient evidence of a loan, Mr. Reder's claim is blocked by the applicable six year statute of limitations. Mr. Tulgan terminated the business venture not later than 1990 and informed Mr. Reder. If there was a loan, the repayment was due not later than

1990. There was no legal claim made for that alleged "loan" until December, 2003, more than twelve years later and well after the six year limitation period expired.

For all the above reasons, the plaintiff moves the Court to enter summary judgment in his favor on all counterclaims by the defendants.

> The Plaintiff,
> By his Attorney,
>
> /s/ Robert L. Leonard
> Robert L. Leonard, Esquire
> Doherty, Wallace, Pillsbury & Murphy, P.C.
> One Monarch Place, Suite 1900
> Springfield, MA 01144-1900
> Tel: (413) 733-3111
> Fax: (413) 734-3910
> B.B.O. Number: 294060

### CERTIFICATE OF SERVICE

I, Robert L. Leonard, Esq., hereby certify that on January 28, 2005, I served a copy of the foregoing on the parties to the case by mailing a copy of same to:

Jack E. Houghton, Jr., Esq.
78 Bartlett Avenue
Pittsfield, MA 01201

/s/ Robert L. Leonard
Robert L. Leonard, Esq.